Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | REBECCA R. PALLMEYER | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 1044 | **DATE** | July 7, 2000 |
| **CASE TITLE** | Jimmie Lee Ford Jr., #B-18015 vs. James H. Page, et al. | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons set forth in the accompanying Memorandum Opinion and Order, Defendants' motion to dismiss [#10] is granted in part and denied in part. Plaintiff may proceed against Defendants Page and Elyea on his claim that he is forced to drink contaminated water. The complaint is dismissed pursuant to FED. R. CIV. P. 12(b)(6) only to the extent that Plaintiff purports any separate cause of action regarding Dr. Elyea's deliberate indifference to unspecified health problems unrelated to the drinking water. Defendants are directed to answer or otherwise plead within twenty-one days of the date of this order.
(11) ■ [See attached Memorandum Opinion and Order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUL 11 2000 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 16 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| mjm | courtroom deputy's initials | 00 JUL 10 AM 9:20 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



JIMMIE FORD, )
)
    **Plaintiff,** )
) No. 00 C 1044
v. )
) U.S. District Judge
JAMES H. PAGE, et al., ) Rebecca R. Pallmeyer
)
    **Defendants.** )

## MEMORANDUM OPINION AND ORDER

Plaintiff Jimmie Ford, a state prisoner, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that Defendants, officials at the Stateville Correctional Center, have violated his constitutional rights by acting with deliberate indifference to his health, safety, and medical needs. Specifically, Plaintiff alleges that the water at the Stateville Correctional Center is contaminated with "radium, gross alpha, and lots of rust," that the contaminated water exposes him to risk of cancer and blindness, and that Defendants have failed to make any effort to rectify the problem. This matter is before the court for consideration of Defendants' motion to dismiss the complaint for failure to state a claim. For the reasons stated in this order, the motion is granted in part and denied in part.

It is well established that *pro se* complaints are to be liberally construed. *Haines v. Kerner*, 404 U.S. 519 (1972), *reh'g denied*, 405 U.S. 948 (1972). *See also Tarkowski v. Robert Bartlett Realty Company*, 644 F.2d 1204 (7th Cir. 1980). Such a complaint may be dismissed for failure to state a claim only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Haines*, 404 U.S. at 521; *Gregory v.*

/6

*Nunn*, 895 F.2d 413, 414 (7th Cir. 1990). When considering whether to dismiss a complaint for failure to state a claim upon which relief can be granted, the court takes the allegations in the complaint as true, viewing all facts--as well as any inferences reasonably drawn therefrom--in the light most favorable to plaintiff. *Bethlehem Steel Corp. v. Bush*, 918 F.2d 1323, 1326 (7th Cir. 1990).

## FACTS

Plaintiff is a state prisoner, confined at the Stateville Correctional Center. Defendant James H. Page is Stateville's warden. Defendant James Elyea is the facility's medical director.[1]

Plaintiff's complaint, deemed true for purposes of the motion to dismiss, alleges as follows: Plaintiff has been having [unspecified] problems with his health. Plaintiff has been provided with sinus pills and Defendant Elyea has discussed Plaintiff's asthma with him, but Plaintiff's asthma is "not the problem." Elyea scheduled a physical examination for the plaintiff sometime in July 2000.

According to Plaintiff, "the water at the Stateville Correctional Center is contaminated with radium, gross alpha and lots of rust," which is "poisoning" Plaintiff. Plaintiff asserts that Defendants know that the contaminated water puts inmates at risk for cancer and blindness but have taken no action. Stateville employees buy or bring their own bottled drinking water. Plaintiff has filed grievances and discussed his concerns with Dr. Elyea, to no avail.

---

[1] By Minute Order of March 1, 2000, the court on its own motion dismissed the complaint as to Defendants George Ryan and the Mayor of Joliet for lack of personal involvement.

2

## DISCUSSION

The Eighth Amendment prohibits deliberate indifference to inmates' health and safety. Failure to take reasonable measures in the face of a substantial risk of serious harm violates the Constitution. *Farmer v. Brennan*, 511 U.S. 825, 845 (1994). In order to establish Eighth Amendment liability, a plaintiff must meet two requirements: first, he must show that the challenged conditions of confinement were objectively so serious as to amount to the denial of a basic human need; second, he must show that the defendant official acted with deliberate indifference. *Id.* at 834. "The infliction must be deliberate or otherwise reckless in the criminal law sense, which means that the defendant must have committed an act so dangerous that his knowledge of the risk can be inferred or that the defendant actually knew of an impending harm easily preventable." *Antonelli v. Sheahan*, 81 F.3d 1422, 1427 (7th Cir. 1996). "Liability under the Eighth Amendment requires punishment, and punishment requires more than negligence, whether ordinary or gross. It requires, at a minimum, that the prison officials have realized there was imminent danger and have refused--consciously refused, knowingly refused--to do anything about it." *Campbell v. Greer*, 831 F.2d 700, 702 (7th Cir. 1987), *relying on Whitley v. Albers*, 475 U.S. 312 (1986).

<u>Water Quality</u>

Plaintiff claims the water at Stateville is unfit to drink and that Defendants Page and Elyea are deliberately indifferent to the known risk. Defendants argue that these allegations do not state a claim for relief but the court concludes the controlling authority is to the contrary. In *Robinson v. Page*, 170 F.3d 747, 748 (7th Cir. 1999), an inmate at the Tamms Correctional

3

Center filed a civil rights action charging that there was lead in the prison's drinking water. The district court dismissed the complaint pursuant to 42 U.S.C. § 1997e(e) based on a lack of physical injury.[2] The Court of Appeals for this circuit reversed the dismissal of that case, ruling that the inmate did not have to show present physical injury to proceed on his lawsuit. Similarly, in *Helling v. McKinney*, 509 U.S. 25, 33 (1993), a case concerning an inmate's exposure to environmental tobacco smoke, the Supreme Court observed:

> This was one of the prison conditions for which the Eighth Amendment required a remedy, even though it was not alleged that the likely harm would occur immediately and even though the possible infection might not affect all of those exposed. **We would think that a prison inmate also could successfully complain about demonstrably unsafe drinking water without waiting for an attack of dysentery.** Nor can we hold that prison officials may be deliberately indifferent to the exposure of inmates to a serious, communicable disease on the ground that the complaining inmate shows no serious current symptoms.

509 U.S. at 33 (emphasis added).[3]

Under these standards, the court concludes that the complaint sets forth an arguable claim for relief under 42 U.S.C. § 1983. Plaintiff charges, and the court must accept as true at this stage of the proceedings, that the water at Stateville is unsafe to drink. If Plaintiff can prove that Defendants have subjected him to an unreasonable risk of harm, then he may be able to recover

---

[2] The lower court's decision is unpublished and the *Robinson* opinion does not indicate whether the dismissal was *sua sponte* or pursuant to a 12(b)(6) motion.

[3] *Helling* is still good law despite the enactment of the Prison Litigation Reform Act. In an unpublished 1998 decision, the Seventh Circuit Court of Appeals noted, citing *Helling*, that "Eighth Amendment protection also extends to conditions that threaten to cause health problems in the future, as well as current serious health problems." *Williams v. Scott*, 142 F.3d 441, TABLE, 1998 WL 152969, *2 (7th Cir. 1998). Unlike the plaintiff in *Williams*, Plaintiff in the case at bar claims potential physical injury and not just emotional distress.

4

damages. It is not the case that Plaintiff could prove "no set of facts" entitling him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

Defendant Page claims that he lacks personal involvement. To be held liable under the Civil Rights Act, a defendant generally must have direct, personal involvement in the events giving rise to the lawsuit. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). The doctrine of *respondeat superior* (blanket supervisory liability) does not apply to actions filed under 42 U.S.C. § 1983. *See Pacelli v. DeVito*, 972 F.2d 871, 877 (7th Cir. 1992). However, Plaintiff points out that he and other inmates have filed numerous grievances with Defendant Page, apprising the warden of their concerns about the water. Although Page correctly points out that he is not mentioned in Plaintiff's "Statement of Claim," the complaint does refer to "grievance to . . . warden." (*See* Complaint at p. 2, section II.)

Moreover, *Antonelli v. Sheahan*, 81 F.3d 1422 (7th Cir. 1996), teaches that dismissal of a *pro se* complaint on grounds of lack of active personal involvement is inappropriate where the official's position justifies an inference that the official had some direct involvement in the alleged violation. *Antonelli* concerned broad claims of unconstitutional conditions of confinement. In that case, the court found that an inference of involvement was justified to sustain claims asserted against certain senior officials, such as the county sheriff or the prison warden, where the claims alleged "potentially systemic," rather than "clearly localized," constitutional violations. *Id.* at 1428-29. In the case at bar, Plaintiff's claim clearly focuses on a non-localized, systemic violation--he takes issue with the prison-wide safety of the water. The warden may arguably be responsible for exposing inmates to unhealthy drinking water.

5

By the same token, the prison's medical director may be thought to have special knowledge of the dangers associated with contaminated water; furthermore, Dr. Elyea's status would place him in a unique position to advocate changes needed to protect the health and safety of the inmate population in his care. While a more fully developed record may reveal that Elyea has no say concerning prison drinking water, the complaint states a cognizable claim against him at least at the threshold level.

The doctrine of collateral estoppel does not bar this lawsuit, as Defendants argue. Judges of this court have ruled in the Department of Corrections' favor in at least two previous lawsuits concerning alleged contamination of the water at Stateville. *See, e.g., Carroll v. DeTella*, 99 cv 2443, 2000 WL 20711 (N.D. Ill. Jan. 10, 2000) (Leinenweber, J.); *Bolden v. Zernicke*, 94 cv 6203, 1999 WL 731780 (N.D. Ill. Aug. 30, 1999) (Williams, J.). The court cannot apply collateral estoppel against Plaintiff Ford, however, as he was not a party to any prior lawsuit regarding the water at Stateville. One of the prerequisites of collateral estoppel is that the party against whom the doctrine is asserted was a party [or privy] to the earlier proceeding. *Kraushaar v. Flanigan*, 45 F.3d 1040, 1050 (7th Cir. 1995), citing *Kunzelman v. Thompson*, 799 F.2d 1172, 1176 (7th Cir. 1986). Neither *Carroll* nor *Bolden* was a class action. Although the decisions in *Carroll* and *Bolden* cast considerable doubt on Plaintiff's likelihood of ultimate success in this lawsuit, the earlier cases were fully developed and resolved at the summary judgment stage. Plaintiff may proceed on his claim that the water at Stateville is dangerously unsafe.

At this early stage, the court rejects Defendants' asserted defense of qualified immunity. Defendants contend that the law is "not clear" as to "how pure drinking water must be." Under

the doctrine of qualified immunity, state officials "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). To evaluate a claim of qualified immunity, the court must engage in a two-step analysis. First, the court determines whether Plaintiff's claim states a violation of his constitutional rights. Then, the court determines whether those rights were clearly established at the time the alleged violation occurred. *See Wilson*, 526 U.S. at 609; *Khuans v. School Dist. 110*, 123 F.3d 1010, 1013 (7th Cir. 1997). If the rights were clearly established, the official may be liable for monetary damages and the suit proceeds to the next stage. If the rights were not clearly established, then the official is immune from suit and the claim is dismissed. *See Richardson v. McKnight*, 521 U.S. 399, 403 (1997) ("[A] legal defense may well involve 'the essence of the wrong,' while an immunity frees one who enjoys it from a lawsuit whether or not he acted wrongly.").

A clearly established right is one where "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640. "Because there is an almost infinite variety of factual scenarios that may be brought into the courtroom, a plaintiff need not point to cases that are identical to the presently alleged constitutional violation." *Denius v. Dunlap*, 209 F.3d 944, 950 (7th Cir. 2000). However, "the contours of the right must have been established so that the unlawfulness of the

defendant's conduct would have been apparent in light of existing law." *Id., citing Cleveland-Perdue v. Brutsche*, 881 F.2d 427, 430 (7th Cir. 1989), *cert. denied*, 498 U.S. 949 (1990)..

Defendants maintain that they are entitled to qualified immunity because water standards are currently "in flux," as noted in the *Carroll* decision cited *supra*. At the time Judge Leinenweber rendered his decision, the E.P.A. had not made a final determination as to what level of radium was safe and was not requiring agencies to take action if radium amounts fell within a certain range. Judge Leinenweber therefore found that neither an objective nor subjective violation of the Eighth Amendment existed because the defendants were not acting with deliberate indifference to a known danger. The question here, however, is not how specifically pure the water must be, but rather whether Defendants have "knowingly and unreasonably" exposed Plaintiff to "an intolerable risk of harm," *see Farmer*, 511 U.S. at 845, by not taking any action to address the problem of unsafe drinking water. While the E.P.A.'s standards may influence that ultimate determination,[4] Plaintiff has a long-established right to food [and by extension, water] that "does not present an immediate danger to the health and well being of the inmates who consume it." *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985), *cert. denied*, 479 U.S. 817 (1986) (citations omitted). The Court of Appeals recently pointed out that qualified immunity is an issue better addressed at summary judgment and is "almost always

---

[4] Of course, non-compliance with E.P.A. standards would not itself necessarily form a basis for a cause of action under 42 U.S.C. § 1983. Violations of state or federal law are not the same as constitutional violations. Rather, the court considers E.P.A. standards only as potentially relevant to Plaintiff's claim that he faces a substantial risk of serious harm; furthermore, Defendants' compliance or non-compliance with the state and federal Environmental Protection Agencies may reflect good faith or deliberate indifference.

8

a bad ground of dismissal." *Jacobs v. City of Chicago*, ___ F.3d ___, 2000 WL 706003, *12 (7th Cir. June 1, 2000). The court declines Defendants' invitation to consider the issue on a Rule 12(b)(6) motion.

Medical Care

The court reads the complaint as challenging only the safety of the water at Stateville; Defendants construe the complaint as also raising a separate claim about the quality of Plaintiff's medical care. To the extent that Plaintiff purports to assert a separate cause of action against Elyea for deliberate indifference to unspecified "health problems" unrelated to the water, Defendants are correct that the complaint is insufficient.

In order for a prison inmate to prevail under 42 U.S.C. § 1983 on a claim of medical mistreatment, he must show "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Plaintiff's vague allegation that he has health problems fails to indicate that he has any "serious" medical condition. *See Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997) (defining what constitutes a "serious" medical need). Furthermore, Elyea's decision to schedule Plaintiff for a physical examination in the near future rebuts any suggestion of callous indifference. The complaint is dismissed insofar as Plaintiff advances a separate claim concerning the quality of his medical care in general.

## CONCLUSION

For the foregoing reasons, the motion to dismiss is denied with respect to Plaintiff's claim that the water at the Stateville Correctional Center is unsafe to drink. The complaint is dismissed

only to the extent that Plaintiff may purport to bring a separate cause of action regarding the quality of his medical care in general.

IT IS THEREFORE ORDERED that Defendants' motion to dismiss (docket #10) is granted in part and denied in part. Plaintiff may proceed against Defendants Page and Elyea on his claim that he is forced to drink contaminated water. Any separate cause of action regarding Dr. Elyea's deliberate indifference to unspecified health problems unrelated to the drinking water is dismissed pursuant to FED. R. CIV. P. 12(b)(6).

IT IS FURTHER ORDERED that Defendants answer or otherwise plead within twenty-one days of the date of this order.

ENTER:

Dated: July 7, 2000

REBECCA R. PALLMEYER
United States District Judge